UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CATHERINE WESTBERRY,

       Plaintiff,

   v.

COMMONWEALTH FINANCIAL
SYSTEMS, INC.,

       Defendant.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-4387
(JEI/KMW)

**OPINION**

**APPEARANCES:**

THE LAW OFFICES OF JENNIFER M. KURTZ
Jennifer M. Kurtz
540 Old Bridge Turnpike
South River, NJ 08882
    Counsel for Plaintiff

LAW OFFICE OF SCOTT J. BEST, ESQUIRE
Scott J. Best, Esq.
418 Route 77
Elmer, NJ 08318
    Counsel for Defendant

**IRENAS**, Senior District Judge:

    This matter arises upon Plaintiff Catherine Westberry's Motion for Attorneys' Fees and Costs Pursuant to Judgment. (Dkt. No. 17)  Plaintiff seeks a total award in the amount of $8,013.00 pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a)(3).  Defendant Commonwealth Financial Systems, Inc. opposes the amount of the award and

1

argues that a total award of $3,533.00 is appropriate.  For the reasons discussed below, Plaintiff's Motion will be granted, but the total award will be reduced to $4,823.50.

## I.

On July 28, 2011, Plaintiff Catherine Westberry filed her Complaint in the instant suit.  (Dkt. No. 1)  She alleged that Defendant Commonwealth Financial Systems, Inc. ("Commonwealth") called her cell phone approximately two times a day for two to three weeks seeking payment of an alleged medical debt.  (Compl. ¶¶ 9-10)  According to the Complaint, Westbery called Commonwealth approximately six times to ask Commonwealth to stop calling her cell phone as she would be billed for those calls. She asked Commonwealth to communicate with her only by mail. (*Id.* ¶ 11)  Westberry alleged that Commonwealth continued to call her, hung up on her when she tried to confirm that Commonwealth would stop calling her cell phone, and told her that the FDCPA allowed Commonwealth to call Westberry's cell phone despite her protests.  (*Id.* ¶¶ 12-14)  Westberry claimed that Commonwealth's actions violated sections 1692d, 1692d(5), and 1692f(5) of the FDCPA and sought statutory damages as well as costs and reasonable attorneys' fees.

On July 27, 2012, Commonwealth issued a Rule 68 Offer of Judgment, pursuant to which Westberry would recover $1,001.00 in

statutory and actual damages, plus reasonable attorneys' fees
and costs.  (Dkt. No. 15 Ex. A)  Westberry accepted the Offer of
Judgment on August 8, 2012 (Dkt. No. 15), and the Court entered
Judgment in her favor on August 14, 2012.  (Dkt. No. 16)

    Westberry filed this Motion seeking attorneys' fees and
costs on August 28, 2012.  (Dkt. No. 17)


                            II.

    Under the FDCPA, an individual may recover "in the case of
any successful action . . . , the costs of the action, together
with a reasonable attorney's fee as determined by the court."
15 U.S.C. § 1692k(a)(3).  Absent unusual circumstances, an award
of attorneys' fees and costs in an FDCPA case is mandatory.  *See*
*Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).
However, as dictated by the FDCPA itself, the fee must be
reasonable.

    "[A] reasonable fee is one which is adequate to attract
competent counsel, but which do[es] not produce windfalls to
attorneys."  *Pub. Interest Research Grp. of N.J., Inc. v.*
*Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (quoting *Student Pub.*
*Interest Research Grp. of N.J., Inc. v. AT&T Bell Labs.*, 842
F.2d 1436, 1448 (3d Cir. 1988)) (internal quotation marks
omitted) (alteration in original).  The Court must use the
lodestar method, which involves multiplying the total number of

                            3

hours reasonably expended by a reasonable hourly rate, to
determine what constitutes a reasonable fee. *Graziano*, 950 F.2d
at 114; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-37
(1983). The court should exclude hours that are not reasonably
expended, including those that are excessive, redundant, or
otherwise unnecessary. *Rode v. Dellarciprete*, 892 F.2d 1177,
1183 (3d Cir. 1990).

The party seeking fees "bears the ultimate burden of
showing that its requested hourly rates and the hours it claims
are reasonable." *Interfaith Cmty. Org. v. Honeywell Int'l,
Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005). The opposing party
may challenge the request by objecting "with sufficient
specificity." *Id.* The party requesting fees must then
"demonstrate to the satisfaction of the court that its fee
request is reasonable." *Id.* Although the lodestar is presumed
to be reasonable, the court may adjust the lodestar in its
discretion. *Rode*, 892 F.2d at 1183.


### III.

At the outset, the Court notes that Commonwealth does not
dispute that Westberry is entitled to attorneys' fees and costs
under the FDCPA. (Def.'s Mem. in Opp. to P.'s Mot. ["Def.'s
Mem."] 2, Dkt. No. 19) Commonwealth instead argues that
Westberry's requested fees are unreasonable. Specifically,

4

Commonwealth contends that Westberry's Motion is inadequately documented, that the requested amount includes hours that were not reasonably expended and that were duplicative, unreasonable, excessive, and unnecessary.  Commonwealth also objects to Westberry's proposed hourly rate as being excessive for the prevailing market rate in this District.  (*Id.*)

Westberry seeks attorneys' fees totaling $7,623.00 for time billed by four attorneys, one law clerk, and several paralegals and legal assistants.[1]  Her request is based on the following rates:

(1)   Jennifer Kurtz, Esq. for 3.9 hours at $285.00 per hour, totaling $1,111.50;

(2)   Adam Hill, Esq. for 7.1 hours at $285.00 per hour, totaling $2,023.50;

(3)   Shireen Hormozdi, Esq. for 2.1 hours at $285.00 per hour, totaling $598.50;

(4)   Nick Bontrager, Esq. for 5.1 hours[2] at $285.00 per hour, totaling $1,453.50;

---

[1] With the exception of Ms. Kurtz, all of the attorneys and administrative personnel who worked on this matter are employed by Krohn and Moss, Ltd., a firm based in Illinois.  Westberry claims that all attorneys other than Ms. Kurtz and Mr. Hill acted as consulting attorneys and thus did not need to seek *pro hac vice* admission.

[2] In her accompanying chart, Westberry lists Mr. Bontrager as having billed 2.1 hours at a rate of $285.00 per hour for a total of $1,453.50.  This calculation was clearly incorrect.  As Westberry's brief states that Mr. Bontrager billed 5.1 hours (P.'s Br. 5), the Court assumes that those hours are correct.

      (5)   Matthew Slodowy for 5.6 hours at $140.00 per hour,

            totaling $784.00; and

      (6)   Legal assistants and paralegals for 11.8 hours at

            $140.00 per hour, totaling $1,652.00.

(P.'s Br. Ex. A)  Westberry also seeks costs of $390.00, which includes the $350.00 filing fee for the complaint and the $40.00 cost for service of the complaint.  (*Id.* 9)

### A. Reasonable Fee

Westberry claims that the fees sought for Ms. Kurtz, Mr. Hill, Mr. Bontrager, Ms. Hormozdi, Mr. Slodowy, and various administrative personnel "are commensurate with the experience and training of each individual." (P.'s Br. 5)  To support the reasonableness of the requested rates, Westberry includes attorney biographies, the 2010-2011 Consumer Law Attorney Fee Survey Report, the 2004 National Law Journal Survey,[3] and the Laffey Matrix.  (P.'s Br. 5-8, Exs. C-E)  Commonwealth argues that no court in this Circuit has relied upon the materials that Westberry submitted and that the 2007 National Law Journal Survey is faulty.  (Def.'s Mem. 9-10)  It instead proposes rates of $250 per hour for Ms. Kurtz, $200 per hour for all other attorneys, and rates between $70 and $125 per hour for law clerk

---

[3] Although Westberry's brief argues that the requested rates are commensurate with the 2007 Billing Survey, the survey included in her exhibits is from 2004.

and paralegal work.  To support these rates, Commonwealth points
to two FDCPA fee awards in this District and one in the Middle
District of Pennsylvania.  (*Id.* 10)

"The general rule is that a reasonable hourly rate is
calculated according to the prevailing market rates in the
community." *Washington v. Phila. Cnty. Court of Common Pleas*,
89 F.3d 1031, 1035 (3d Cir. 1996) (citing *Blum v. Stenson*, 465
U.S. 886, 895-96 n.11 (1984)).  Plaintiff bears the burden "of
producing sufficient evidence of what constitutes a reasonable
market rate for the essential character and complexity of the
legal services rendered in order to make out a prima facie
case." *Smith v. Phila. Hous. Auth.*, 107 F3d 223, 225 (3d Cir.
1997).  Where a plaintiff has failed to meet her burden, the
court must exercise its discretion in setting a reasonable
hourly rate.  *Washington*, 89 F.3d at 1036.

Westberry has cited no cases in this Circuit or this
District that have adopted the materials she offers as evidence
of the prevailing market rate in the District of New Jersey, nor
has she provided any affidavits indicating that the requested
rates are commensurate with this District's prevailing market
rates.  Therefore, The Court declines to adopt the 2010-2011
Consumer Law Attorney Fee Survey, the Laffey Matrix, or the 2007
National Law Journal Billing Survey.  In doing so, the Court
joins several other courts in this District that have rejected

7

these materials in similar cases.  *See, e.g.*, *Bilazzo v. Portfolio Recovery Assocs., LLC*, 876 F. Supp. 2d 452, 470 (D.N.J. 2012) (declining to adopt the Consumer Law Attorney Fee Survey, the Laffey Matrix, and the National Law Journal Survey to determine reasonable attorneys' fees in an FDCPA case involving the same firm as the instant case); *Conklin v. Pressler & Pressler LLP*, No. 10-3566, 2012 WL 569384, at *4-5 (D.N.J. Feb. 21, 2012) (rejecting these materials in an FDCPA suit); *Levy v. Global Credit & Collection Corp.*, No. 10-4229, 2011 WL 5117855, at *3 (D.N.J. Oct. 27, 2011) (refusing to rely on the Consumer Law Attorney Fee Survey and the Laffey Matrix and noting that the Third Circuit has never adopted either fee schedule); *Weed-Schertzer v. Nudelman, Klemm & Golub*, No. 10-6402, 2011 WL 4456553, at *4-5 (D.N.J. Sept. 23, 2011) (same).

Commonwealth urges this Court to adopt rates of $250 per hour for Ms. Kurtz, $200 per hour for the remaining attorneys, and rates between $70 and $125 per hour for the law clerk and paralegal work.  To support these rates, Commonwealth cites three cases that adopted similar rates in FDCPA cases: *Ford v. Consigned Debts & Collection, Inc.*, No. 09-3102(NLH)(AMD), 2010 WL 5392643 (D.N.J. Dec. 21, 2010), *Weed-Schertzer*, 2011 WL 4436553, and *Overly v. Global Credit & Collection Corp., Inc.*, No. 1:10-CV-2392, 2011 WL 2651807 (M.D. Pa. July 6, 2011).  At the outset, the Court notes that Commonwealth's reliance on

8

*Overly* is inapt.  The rates used in *Overly* were indicative of
the prevailing market rates in the Middle District of
Pennsylvania, which is clearly a different market than the
District of New Jersey.

In the remaining two cases, both courts adopted rates of
$200 to $250 per hour for associates of varying levels of
seniority and rates of $125 per hour for staff.[4]  *See Weed-Schertzer*, 2011 WL 4436553, at *4; *Ford*, 2010 WL 5392643, at *8.
These rates are comparable to the rates awarded in several other
FCPA cases in this District.  *See, e.g.*, *Conklin*, 2012 WL
569384, at *4-5 (adopting rates of $250 and $200 per hour for
associates and $125 per hour for law clerks and paralegals);
*Cassagne v. Law Offices of Weltman, Weinberg & Reis Co., LPA*,
No. 11-2791(FLW), 2011 WL 5878379, at *6 (D.N.J. Nov. 23, 2011)
(awarding similar rates); *Levy*, 2011 WL 5117855, at *4, 8
(adopting the Community Legal Services ("CLS") fee schedule and
awarding rates of $210 and $200 per hour for associates and $110
per hour for law clerks and paralegals).  Indeed, these rates
are higher than those awarded to Ms. Kurtz and attorneys from

---

[4] In *Ford*, the court did not specify which hourly rates it adopted and instead
simply awarded the plaintiff the total amount requested.  2010 WL 5392643, at
*8.  However, an examination of the briefs and exhibits submitted in relation
to the motion for attorneys' fees indicates that the court relied upon an
affidavit from Jeffrey S. Hyslip, Esq., which proposed rates of $300 per hour
for a senior partner, $200 to $250 per hour for associates, and $125 per hour
for staff.  *Ford*, No. 09-3102(NLH), CM/ECF No. 12-2.  The *Weed-Schertzer*
Court also relied on this affidavit, and the *Ford* Court's adoption of it, in
reaching its decision.

Krohn and Moss in July 2012.  In that case, Judge Hillman adopted the CLS fee schedule and awarded rates of $235 per hour for Ms. Kurtz, $255 per hour for an attorney with over ten years' experience, $190 per hour for an attorney with three years' experience, and $80 per hour for Moira Roth, a paralegal. *Bilazzo*, 876 F. Supp. 2d at 470-71.  Because the rates that Defendant requests are in keeping with the awards in other cases and with the CLS fee schedule, the Court will adopt them here.

Commonwealth indicates that it "is willing to concede a fee of $250.00 per hour" for Ms. Kurtz's services, as she is the only attorney licensed to practice in New Jersey and serves as lead counsel.  (Def.'s Mem. 10)  Therefore, the Court will accept that rate.[5]  With respect to the remaining attorneys, Commonwealth proposes a rate of $200 per hour.

The CLS fee schedule suggests rates between $180 and $225 for attorneys with two to five years' experience and rates

---

[5] The Court notes that this rate is higher than both the rate Ms. Kurtz received in *Bilazzo* and the rate that this Court would be inclined to adopt under the CLS fee schedule.  *See* Attorney Fees, *Community Legal Services of Philadelphia*, http://www.clsphila.org/Content.aspx?id=206 (last visited January 24, 2013).  In *Bilazzo*, Ms. Kurtz represented that she had been licensed to practice in New Jersey for over seven years.  *See Bilazzo*, 876 F. Supp. 2d at 470; *id.*, Dkt. No. 18, P.'s Reply Br. 5.  Thus, under the CLS schedule an award of $235 per hour was appropriate.  But in the instant case, Ms. Kurtz has represented that she has been licensed to practice in New Jersey for four years.  (P.'s Reply Mem. 8, Dkt. No. 21)  The New Jersey Bar Directory indicates that Ms. Kurtz was admitted in 2008, thereby confirming her representation to this Court.  Therfore, the Court would award an hourly rate of $200 per hour.

Although Defendant's willingness to concede a $250 hourly rate renders it unnecessary for the Court to reconcile Ms. Kurtz's disparate representations of her years of experience, the Court suggests that Ms. Kurtz take more care in the future to ensure that her representations are accurate.

between $225 and $255 for attorneys with six to ten years' experience.  Because both Mr. Hill and Mr. Bontrager have been admitted to practice for nearly five years (P.'s Reply Mem. 8), the Court agrees that a rate of $200 per hour is appropriate for their work.[6]  With respect to Ms. Hormozdi, the Court finds that a higher rate should apply.  Ms. Hormozdi has been practicing for close to nine years.  (*Id.*)  Therefore, the Court finds that an hourly rate of $225 is reasonable.

Westberry also proposes hourly rates of $140 per hour for Mr. Slodowy and various paralegals and legal assistants, including Imma Almourzaeva, Moira Roth, Becky Shane, Jessica Heskiel, and Andrew Davis.  Commonwealth counters that a rate between $70 and $125 per hour is reasonable.  As Mr. Slodowy is

---

[6] The Court expresses reservations about Mr. Bontrager's status as a consulting attorney.  As a preliminary matter, Mr. Bontrager spent 5.1 hours on this matter compared to the 3.1 hours that Ms. Kurtz spent.  Further, Mr. Bontrager had substantial contact with the client, including receiving the initial client inquiry, setting up the client consult, and interviewing the client.  He also prepared a memo on which counts to allege, researched applicable state and federal statutes to determine which state and federal claims to assert, reviewed and researched the viability of Commonwealth's affirmative defenses, and sent Commonwealth a settlement demand.  (P.'s Ex. A)

Faced with an attorney from Krohn and Moss who performed almost identical tasks as a "consulting attorney," the *Bilazzo* Court found that "the nature of the work performed by [the attorney] went far beyond 'consulting.'" As a result, the Court held that the attorney should have sought *pro hac vice* admission, reduced his hourly rate by fifteen percent, and deducted a $150 *pro hac vice* fee from his total award.  Given the similarity between that attorney's work and Mr. Bontrager's, it is obvious that Mr. Bontrager also should have sought *pro hac vice* admission in this case.  But as Defendant has not raised this issue, the Court will not reduce fees here.  *See Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) ("[T]he district court cannot decrease a fee award based on factors not raised at all by the adverse party.")  Nevertheless, Mr. Bontrager in particular and Krohn and Moss in general would do well to abide by the local rules in the future.

11

licensed to practice in Illinois, $140 per hour is a reasonable rate for services he performed in a law clerk's capacity.

With respect to the work performed by various paralegals and legal assistants, $140 per hour is not reasonable.  The CLS fee schedule establishes the following rates for paralegals: $80 to $100 for paralegals and $100 to $135 per hour for senior and supervisory paralegals.  Westberry has provided no documentation as to the training, skill, or level of experience for any of the paralegals or legal assistants.  Because it is impossible for the Court to determine whether these individuals would qualify as senior or supervisory paralegals, the Court cannot find that $140 is a reasonable hourly rate.  Thus, the Court will adopt a rate of $80 per hour for the paralegals and legal assistants.

### B.  Reasonable Hours

In determining an award of attorneys' fees, the court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary." *Pub. Interest Research Grp.*, 51 F.3d at 1188.  "Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Id.*  When conducting such an examination, the court may reduce an award

12

only "in response to specific objections made by the opposing party."  *Interfaith Cmty. Org.*, 426 F.3d at 711.

### 1.

Commonwealth objects to 6.8 hours of the 17.4 hours of time that Mr. Slodowy, legal assistants and paralegals billed.  It argues that 2.5 hours "should be excluded in their entirety as they were entirely administrative tasks."  (Def.'s Mem. 6)  Commonwealth seeks to exclude the following entries on that basis:

(1)   July 1, 2011—"Sent email to Jennifer Kurtz to review and approve Complaint before filing (.2) – Jessica Heskiel";

(2)   July 28, 2011—"Case up for filing; exchanged emails with client prior to filing; prepared summons, cover sheets; finalized complaint for filing (1.10) – Imma Almourzaeva";

(3)   August 20, 2011—"Serve complaint by process server; found process server and provided all necessary documents with instructions (.4) – Imma Almourzaeva";

(4)   May 3, 2012—"Reviewed file for whether we need to amend 26(a) disclosures with pending discovery closure; memo regarding discovery (.4) – Matthew Slodowy";

(5)   May 21, 2012—"Spoke to client; reviewed file (.2) -
        Imma Almourzaeva";

(6)   July 25, 2012—"Confirm Jennifer Kurtz can cover Aug 13
        telephonic status (.2) - Moira Roth."

(Def.'s Mem. 4-5; P.'s Ex. A)

"Administrative tasks, which are not the type normally
billed to a paying client, may not be recovered by a party
through a fee petition." *Bilazzo*, 876 F. Supp. 2d at 471
(quoting *Levy*, 2011 WL 5117855, at *6) (internal quotation marks
omitted).  Such tasks may include opening a file in a database,
mailing letters, copying documents, entering case updates in a
management system, calendaring deadlines, confirming court
contact information, and talking with a process server or court
clerk.  *See, e.g.*, *id.* at 472; *Levy*, 2011 WL 5117855, at *6.
Based on these guidelines, the Court will exclude all of Ms.
Heskiel's time (.2 hours) and Ms. Roth's time (.2 hours).  In
addition, the Court will reduce the hours Ms. Almourzaeva
incurred on July 28, 2011 by .1 hours, as "case up for filing"
appears to indicate that she opened a file in the database.  As
the other contested hours appear to be more than purely
administrative tasks, the Court will not exclude them.

Commonwealth further contends that the remaining hours that
administrative personnel billed should be reduced by 4.3 hours
"for entries that seem to log an inordinate amount of time for

14

the tasks performed." (*Id.*)  Specifically, Commonwealth seeks
the following reductions:

(1)  June 23, 2011—"Prepare Complaint and send to client –
     Prepare FDCPA Complaint for Federal Court; Review
     local rules (1.9 hours) – Andrew Davis"; reduce by .9
     hours;

(2)  January 30, 2012—"Prepare Rule 26a federal disclosures
     for attorney review; reviewed client information sheet
     and file; prepare disclosure identifying all witnesses
     (1.4 hours) – Imma Almourzaeva"; reduce by .9 hours;

(3)  March 20, 2012—"Revised response to request to admit;
     sent to opposing counsel; revised response to Request
     for Production; revised response to Interrogatories
     [sic] from Collector (3.9 hours) – Matthew Slodowy";
     reduce by 1 hour;

(4)  April 24, 2012—"Prepared subpoena for client's phone
     records; sent to Jennifer Kurtz for approval; hired
     process server to serve personally on AT&T; prepared
     notice of subpoena (2.5 hours) – Imma Almourzaeva";
     reduce by 1.5 hours.

(Def.'s Mem. 5-6; P.'s Ex. A)  Commonwealth's basic argument is
that all of the documents prepared in these entries were form
documents or answer, which would have required little time to
prepare or edit.  But with the exception of the Complaint,

15

Commonwealth has not provided the Court with any of these documents.  As a result, the Court is reluctant to find that the documents in question were, in fact, form documents.  However, the Court does find that an inordinate amount of time was spent on three of the contested entries.

First, 1.9 hours is an unreasonable amount of time to spend preparing a Complaint that consists of eighteen paragraphs, several of which are clearly part of a form FDCPA complaint.  Thus, the Court will reduce Mr. Davis's hours by .9 hours.  Second, the 3.9 hours that Mr. Slodowy spent on discovery responses appears to be excessive in light of the nature of this case.  Accordingly, the Court will subtract 1 hour from that time.  Finally, with respect to the time Ms. Almourzaeva incurred on April 24, 2012, the Court agrees that 2.5 hours is an excessive amount of time to spend preparing a subpoena, sending it for review, and hiring a process server.  The subpoena itself is a form document, which should take little time to prepare, and the Court fails to see how the remaining tasks in this entry would take so much time.  Therefore, the Court will reduce the hours that Ms. Almourzaeva incurred on April 24, 2012 by 1.5 hours.

Based on these reductions, Westberry can recover 5.6 hours for hours that Mr. Slodowy billed and a total of 8.9 hours for hours that administrative staff billed.

16

**2.**

In addition to the hours that administrative staff billed, Commonwealth argues that much of the time that attorneys billed "was unnecessary, duplicative, or excessive." (Def.'s Mem. 7) Commonwealth challenges numerous time entries.  Of these, the Court will exclude or reduce the following entries:

(1)   June 16, 17, and 20, 2011 – Mr. Bontrager:  3.9 hours spent on initial intake, client interview, research, and setting up case tracking, which included an entry to "open file in database" and "prepare Amicus Precedent to track case."  As these two tasks are administrative, the Court will reduce this time by .3 hours.

(2)   July 2 and 28, 2011 – Ms. Kurtz:  .2 hours on each day to review draft of Complaint and then final review of Complaint.  As Commonwealth notes, there are no time entries indicating that the Complaint underwent any changes between Ms. Kurtz's July 2 review and July 28. Therefore, the Court will exclude .2 hours.

(3)   August 31, 2011 – Ms. Kurtz:  "Received and reviewed Defendant's Answer to Complaint and disclosure; note that Nick Bontrager is to review and handle (.3)." Noting that Mr. Bontrager would review the Answer is

17

administrative.  Further, it appears that Ms. Kurtz
did nothing more than look at the Answer and forward
it to Mr. Bontrager.  Thus, the Court will reduce this
time by .2 hours.

(4)  October 3, 2011 – Ms. Kurtz:  "Received ECF setting
initial status conference (.2)."  The Court sees no
reason why Plaintiff should recover .2 hours of Ms.
Kurtz's time for simple receipt of a notice when no
other action was taken.  Accordingly, the Court
excludes this time.

(5)  November 1, 2011 – Mr. Bontrager:  "Reviewed file and
updated case calednar [sic] with upcoming scheudling
[sic] conference (.4)."  The Court will exclude this
time as it appears to be entirely administrative in
nature.

(6)  February 2, 2012 – Ms. Kurtz:  "Scheduling Conference:
preparation and attendance (1.0 hours)."  Commonwealth
contends that this time is excessive as the conference
took place over the phone, lasted ten minutes, and
"was only a scheduling conference."  (Def.'s Mem. 8).
The Court agrees and will reduce the time by .5 hours.

(7)  February 2, 2012 – Ms. Kurtz:  "Reveiwed [sic] ECF
with Scheduling Order (.1)."  This time will be
excluded as administrative.

18

(8)  February 13, 2012 – Mr. Hill:  "Received and reviewed

     Request to Admit; highlight; review file; prepare memo

     to associate for answers; diary docket (.2)."  As the

     majority of this work is administrative, the Court

     will exclude .1 hours.

(9)  February 20, 2012 – Mr. Hill:  "Reviewed file and

     prepared full case report to partners (.5)."  The

     Court agrees with Commonwealth that it should not be

     responsible for internal memos updating partners as to

     the status of the case, particularly where there is no

     record that any partner either requested or reviewed

     such a memo.  Thus, this time will be excluded in its

     entirety.

(10) February 28, 2012 – Mr. Hill:  "Reviewed and saved

     order adjourning date and time of status conference;

     memo to file (.1)."  This time will be excluded as

     administrative.

(11) March 6, 2012 – Mr. Hill:  "Received and saved email

     requesting extension (.1)."  This time will be

     excluded as administrative.

(12) March 8, 2012 – Mr. Hill:  "Reviewed file and prepared

     case report now that discovery has began [sic] (1.0)."

     As Mr. Hill was clearly familiar with the case and how

     it was proceeding, 1 hour for this report is

19

excessive.  Accordingly, the Court will reduce this entry by .5 hours.

(13) June 29, 2012 and July 2, 2012 – Mr. Hill:  1.2 hours spent researching and preparing motion for *pro hac vice* admission.  Commonwealth argues that .8 hours should be excluded as a motion for *pro hac vice* admission is a standard form motion and does not require extensive research and preparation.  The Court agrees and thus reduces these entries by .8 hours.

Westberry originally sought fees for 3.9 hours of time that Ms. Kurtz billed.  For the reasons listed above, the Court reduces these hours by 1 hour, which leaves 2.9 hours which Westberry can recover.  With respect to Mr. Hill, Westberry sought fees for 7.1 hours of his time.  The Court will reduce these hours by 2.1 hours.  Thus, Westberry may recover for 5 hours of Mr. Hill's time.  Westberry also may recover the full amount requested for Ms. Hormozdi's time, 2.1 hours.  Finally, Westberry sought fees for 5.1 hours of Mr. Bontrager's time, which the Court will reduce by .7.  Therefore, Westberry can recover 4.4 hours of time that Mr. Bontrager billed.

## C.  Lodestar Calculation

Based on the reasons discussed above, the Court finds that the lodestar calculation is as follows:

| Legal Professional | Reasonable Hourly Rate | Reasonable Hours Expended | Total Fee |
|---|---|---|---|
| Jennifer Kurtz, Esquire | $250 | 2.9 | $725.00 |
| Adam Hill, Esquire | $200 | 5.0 | $1,000.00 |
| Shireen Hormozdi, Esquire | $225 | 2.1 | $472.50 |
| Nicholas Bontrager, Esquire | $200 | 4.4 | $880.00 |
| Matthew Slodowy, Esquire | $140 | 4.6 | $644.00 |
| Legal Assistant/Paralegal | $80 | 8.9 | $712.00 |

These fees total $4,433.50.  Westberry is also entitled to recover $390.00 in costs.  Thus, a total award of $4,823.50 will be granted to Westberry.

## IV.

For the reasons stated above, Plaintiff's motion for attorneys' fees and costs is granted in part.  Westberry's requested fees and costs are reduced to $4,823.50.  The Court will issue an appropriate Order.

Date:  February 4, 2013

/s/ Joseph E. Irenas _____

**Joseph E. Irenas, S.U.S.D.J.**